# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGELA C. BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00543-TWP-DML |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner of | ) | |
| the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Angela C. Bennett ("Bennett") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her Application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

## I.  BACKGROUND

### A.  Procedural History

On August 5, 2013, Bennett filed an application for DIB under Title II of the Act, alleging a disability onset date of May 13, 2013. (Filing No. 18-5 at 193-95.) Her claim was denied on October 2, 2013, and again on reconsideration on January 14, 2014. (Filing No. 18-4 at 97-110.) After a hearing before Administrative Law Judge ("ALJ") Kimberly Sorg-Graves, Bennett's claim was again denied. (Filing No. 18-2 at 38.) Bennett's request for review by the Appeals Council was denied on November, 12, 2015, rendering the ALJ's decision the final decision of the

---

[1] The Court has substituted Nancy Berryhill as the proper Defendant in this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017.

Commissioner for purposes of judicial review. Bennett filed this action under 42 U.S.C. § 405(g) asking the Court to review the ALJ's decision.

**B.**  **Factual Background**

Bennett was born August 1, 1960 and she was 53 years of age at her alleged onset date. She is a high school graduate and has a prior work history of customer service at retail stores such as Walmart, Hobby Lobby and Babies R Us. (Filing No. 18-2 at 50-51.) Bennett states that she is unable to work due to medical issues arising from disorders of the spine and an anxiety disorder.

The Court will limit its recitation of facts to those relevant to the issues being challenged. Bennett's history of back pain dates back to at least 2013. A medical assessment from May 2013 showed that she suffered from lumbar radiculopathy, lumbar degenerative disc disease, and sacroiliac joint dysfunction. (Filing No. 18-11 at 16.) Lumbar radiculopathy was also noted in July 2012. (Filing No. 18-11 at 89.)

In July 2013, Bennett presented to IU Behavior Health regarding depression and anxiety. She reported her husband was emotionally abusive and she felt "very unhappy" in her marriage. John Delaney, M.D. ("Dr. Delaney"), assessed depression and anxiety disorder, continued her medication and recommended psychotherapy. (Filing No. 18-10 at 674-674.)

On September 16, 2013, Bennett underwent an internal medicine examination with a consultative examiner. (Filing No. 18-11 at 61-65.) The examiner noted that Bennett reported her back pain was getting worse, and that she had difficulty with sitting, standing, walking, bending over and lifting for long periods of time. (Filing No. 18-11 at 65.) Her lumbar forward bending was painful and limited to about 60 degrees. (Filing No. 18-11 at 65.) The examiner noted that Bennett suffered from chronic back pain due to degenerative disc disease and sacroiliac joint arthritis. (Filing No. 18-11 at 65.)

Also in September 2013, Bennett underwent a consultative psychological examination with Alfred R. Barrow, Ph.D. (Filing No. 18-11 at 67.) Dr. Barrow noted a "somewhat tense, anxious, depressed, and periodically tearful" mood in Bennett. (Filing No. 18-11 at 70.) He concluded that she presented symptoms consistent with major depressive disorder, which at the time of the examination was mild in severity. (Filing No. 18-11 at 73.)

In October 2013, Dr. Pressner, a state agency psychologist, reviewed the medical evidence and concluded that Bennett's medically determinable impairments of anxiety and affective disorders were non-severe, and did not meet or equal the criteria of any listings, because they caused no more than mild limits in any of the "B criteria" areas of functioning (Filing No. 18-3 at 25-26).

In December 2013, an examining neuropsychologist and licensed psychologist, Donald Layton, Ph.D. evaluated Bennett to consider the efficacy of her pain management treatment. Dr. Layton did not find Bennett to be an acceptable candidate for invasive pain intervention, including spinal cord stimulator placement, because of her mood disorder and anxiety. (Filing No. 18-14 at 46.) Dr. Layton noted that Bennett had a stressful family life, with both her husband and daughter addicted to medications. He found her to have "significantly elevated levels of depression and anxiety" which made her have "feelings of being overwhelmed, unable to cope and of giving up." (Filing No. 18-14 at 46.) A Minnesota Multiphasic Personality Inventory test indicated Bennett had a tendency to exaggerate her symptoms somewhat. (Filing No. 18-14 at 45-46).

In January 2014, state agency doctors Joelle Larsen, Ph.D. and J. Sands, M.D. concluded that Bennett was not disabled. (Filing No. 18-3 at 23-24.) In an MRI performed in June 2014, the radiologist observed "moderately severe if not severe right foraminal narrowing" which had "progressed somewhat." (Filing No. 18-14 at 42.) In April 2015, treating physician Dr. Joshua

Salyer noted a "disc protrusion with spurring causing moderately severe right foraminal narrowing with spurring causing moderately severe right foraminal narrowing and impingement of the right L5 nerve root." (Filing No. 18-19 at 21.)

On May 4, 2015, Bennett testified at her hearing in detail regarding her pain, inability to do physical chores, and the effects of her pain medication. She discussed seeing a psychiatrist at St. Francis Behavioral Health for six years and explained that she had recently experienced "a lot of extreme anxiety attacks" due to increased "marital stress." (Filing No. 18-2 at 60.) At the time of her hearing, she was separated from her husband. (Filing No. 18-2 at 49.) Bennett testified that her anxiety was not as bad as it had been in the past, but she still "[shook] a lot" and was "very anxious and nervous about things. (Filing No. 18-2 at 61.)

## II.  STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement,

she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpairt P, Appendix 1, and whether the impairment meets the twelve month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.  ALJ DETERMINATION

At step one, the ALJ determined that Bennett met the insured status requirements of the Act on the date of her application, and that she had not engaged in substantial gainful activity since May 13, 2013, the alleged onset date. (Filing No. 18-2 at 27). At step two, the ALJ found that Bennett suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spine and a partially torn right rotator cuff. (Filing No. 18-2 at 27.) At step three, the ALJ found that Bennett did not have an impairment that met or medically equaled the severity of

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Filing No. 18-2 at 31.)

After step three, but before step four, the ALJ assigned Bennett the following RFC:

> …the claimant retains the residual functional capacity to lift, carry, push, pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk, each for 6 hours in an 8-hour workday. However, she would need to have a sit-stand option permitting her to sit to perform work for at least 5 minutes after every 30 minutes of standing and walking. She further would need to stand or walk to perform work for at least 5 minutes after every 30 minutes of sitting. The claimant can frequently balance. She can occasionally stoop, kneel, crouch, crawl, climb ramps or stairs, and climb ladders, ropes, and scaffolding. The claimant can occasionally reach overhead with the right upper limb.

(Filing No. 18-2 at 36.) At step four, the ALJ determined that Bennett was unable to perform any past relevant work. (Filing No. 18-2 at 36.) At step five, considering Bennett's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Bennett could perform. (Filing No. 18-2 at 37.) Specifically, the ALJ found that Bennett was able to perform light work as a general office helper, mail clerk, and shipping and receiving clerk. (Filing No. 18-2 at 37.) Based on these findings, the ALJ concluded that Bennett was not disabled as defined by the Act. (Filing No. 18-2 at 38.)

## IV. DISCUSSION

Bennett challenges the ALJ's determination, arguing that the ALJ: (1) erred at step three in concluding that Bennett's impairments did not meet or equal a listing; (2) erred in her RFC finding that Bennett could perform light work; and (3) erred by failing to consider Bennett's mental impairments in her RFC determination. (Filing No. 21 at 14-28.)

### A. Listing 1.04(A)

Bennett argues two reasons that the ALJ erred in her determination that she did not meet or medically equal Listing 1.04, pertaining to "disorders of the spine." (Filing No. 21 at 29.) First, Bennett contends that the ALJ's decision itself demonstrates that she meets the requirements of the listing. (Filing No. 21 at 18-19.) And second, she argues that when presented with new medical

evidence not considered by state agency physicians, the ALJ was required to seek an updated opinion from a medical expert regarding whether she met or medically equaled a listing. (Filing No. 21 at 19.)

In order to satisfy Listing 1.04(A), a claimant must establish a disorder of the spine that results in "compromise of a nerve root (including the cauda equine) or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ noted that "[t]he most recent MRI study, performed in November 2014, did show compression of the L5 nerve root." (Filing No. 18-2 at 31.) The ALJ then recited select medical findings that would satisfy Listing 1.04(A) such as "some reduced lumbar range of motion and positive straight leg raising," "abnormal sensation and weakness," and "degenerative disc disease with disc bulging and spurring at the mid and lower cervical levels, affecting the spinal cord and neural foramen at multiple levels." (Filing No. 18-2 at 31.) The ALJ contrasted these, however, with the following findings: a medical examination that showed "intact neurological functioning, including strength, sensation, and reflexes," one study that showed "no nerve root involvement," and an EMG-nerve conduction study that showed "no evidence of myopathy, myelopathy, or radiculopathy." (Filing No. 18-2 at 31.)

The ALJ does not, however, provide any citations to the record indicating which medical records contain these diagnoses, which physician or other medical professional made them, or what weight she assigned to each medical source. Indeed, the two paragraphs addressing Listing 1.04(A) do not include a single citation to the record. The ALJ also does not provide any

explanation regarding why she discounted the evidence that supported Listing 1.04(A) in favor of evidence that did not. While an ALJ need not discuss in detail every piece of evidence in the record, she must explain her analysis with enough detail and clarity to permit meaningful review. *See Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012). The ALJ did not do so here, and thus remand is required.

Moreover, as Bennett points out, in the RFC determination section of the ALJ's decision, the ALJ cites many pieces of medical evidence that would support a finding that Bennett meets or medically equals Listing 1.04(A). She cites (1) evidence of neuro-anatomic distribution of pain, (Filing No. 18-2 at 33) ("worsening back pain that went down her hips to her leg"); (2) limitation of motion of the spine, (Filing No. 18-2 at 33) ("[l]umbar forward bending was painful and limited to 60 degrees," and "low back tenderness and reduced range of motion"); (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, (Filing No. 18-2 at 33-34) ("subjective weakness in the arms at times," "[s]ensation in the right upper limb was decreased to light touch diffusely," and "some weakness with anterior raise"); and (4) positive straight-leg raising test, (Filing No. 18-2 at 33) ("straight leg raising was positive at 20 to 30 degrees in both legs"). Given these findings, the ALJ fails to draw a logical bridge between the evidence and her earlier conclusion that Bennett did not meet or medically equal a listing.

Bennett also contends that the ALJ erred by failing to obtain an updated medical opinion after the November 2014 MRI indicated nerve root involvement. The medical records reviewed by agency physicians did not include the results of that MRI, and those physicians concluded that Bennett did not meet or medically equal a listing. (Filing No. 18-19 at 3.) The agency reports do not indicate what role the lack of nerve root involvement played in their findings, and the ALJ's

decision regarding the Listing does not explicitly discuss the agency physician's findings. Social Security Ruling 96-6p specifies that an ALJ must obtain an updated medical opinion from a medical expert when "additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6P (1996). Because the ALJ does not explicitly discuss the medical consultant's findings or the effect of the later-received MRI results, the Court simply cannot determine what consideration the ALJ gave to the impact of the new medical evidence and whether it might have changed the medical consultant's opinion. On remand, the ALJ should be sure to consider whether an updated medical opinion is necessary here.

**B.      Remaining Arguments**

Bennett also argues that the ALJ made two errors in her RFC determination in finding that Bennett could perform light work and by failing to consider Bennett's mental impairments in her RFC determination. Because remand is required on the Listing 1.04 issue, the Court will only briefly discuss Bennett's remaining arguments.

Judicial review of the ALJ's decision rests on whether substantial evidence supports her residual functional capacity finding, which takes all relevant evidence into account, including objective medical evidence, treatment, physician's opinions and observations, as well as plaintiff's own statements about her limitations. 20 C.F.R. § 404.1545; *Diaz v. Chater*, 55 F.3d 300, 306, n. 2 (7th Cir. 1995). The ALJ relied heavily on the state agency physicians and psychologists when assessing Bennett's physical and mental capacity (Filing No. 18-2 at 36). The ALJ recognized that as non-examining physicians, these doctor's opinions were not entitled to controlling weight,

so she weighed them as highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act. *Id*.

Dr. M. Brill and Dr. J. Sands both assessed a light work capacity that accommodated frequent balancing and occasional other postural limits (Filing No. 18-3 at 9-10, 22-23). Dr. Pressner and Dr. Larsen both found that Bennett's mental impairments caused no more than mild limits on mental functional capacity (Filing No. 18-3 at 21). The opinions of Dr. Pressner and Dr. Larsen, who reviewed Dr. Barrow's mental examination findings, confirm that she did not have any significant mental limitations that would restrict her functioning. After careful consideration of the record, the ALJ concluded that Bennett had only mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace related to her mental conditions. (Filing No. 18-2 at 5.) The ALJ noted that Bennett did not have any episodes of decompensation and thus found that Section C of the Listings did not apply. *Id*. The ALJ adequately addressed the evidence concerning Bennett's mental health conditions and found that her mental impairments "were not severe." (Filing No. 18-2 at 30.) In discussing the remaining impairments, the ALJ determined they "were severe." Specifically, the ALJ stated "the symptoms, signs and findings from these impairments, both singly and in combination, significantly limit her ability to perform work related activities." (Filing No. 18-2 at 31.) However, the Commissioner concedes that the ALJ did not discuss these findings when discussing the RCF. Because she failed to do so, **remand** is warranted on this issue. "Having found that one or more of [Appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments--including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Bennett also contends that the ALJ failed to account for limits assessed by the examining physician on her abilities to sit, stand, walk, bend, and lift. However, the ALJ reasonably accommodated Bennett's RFC, consistent with the examining physician's findings and the state agency physicians' assessments. Bennett has not identified any specific medical source opinions that contradict these conclusions, and therefore, the ALJ's functional capacity conclusion is **affirmed**.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 9/11/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov